# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  :
:
v.  :  3:18-CR-114
:  (JUDGE MARIANI)
ANGEL ROMEU,  :
:
Defendant.  :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Angel Romeu's "Motion to Dismiss the Indictment and Suppress Wire and Electronic Communication Disclosed in Violation of Title III" (Doc. 31).

In 2016, Pennsylvania State Police were investigating a large-scale methamphetamine distribution organization that operated mainly within Schuylkill County, Pennsylvania. (Doc. 46, at 5). During that investigation, the investigators gathered intercepted communications pursuant to authorizations issued by the Honorable Correale Stevens, President Judge Emeritus of the Superior Court of Pennsylvania, on March 4 and 24, 2016, and April 5 and 6, 2016. (Docs. 32-1; 32-2; 32-4; 32-5). On April 4, 2016, the Honorable Jack A. Panella, Judge of the Superior Court of Pennsylvania, also issued an authorization. (Doc 32-3). The issued orders limited the interception authority to "gathering evidence of several offenses under the law of the Commonwealth of Pennsylvania – 18 Pa. C.S. § 903 (conspiracy), 35 P.S. § 780-113(a)(3) (delivery and/or possession with intent to

deliver a controlled substance), 18 Pa. C.S. § 911 (corrupt organization), and 18 Pa. C.S. § 5111 (Dealing in Proceeds of Unlawful Activity)." (Docs. 32-1; 32-2; 32-3; 32-4; 32-5).

On April 9, 2016, Defendant Romeu was arrested by the Pennsylvania State Police and "charged with various Pennsylvania Drug Act offenses, including Conspiracy to Deliver and Possess with Intent to Deliver Drugs and Possession with Intent to Distribute Drugs." (Doc. 46, at 9). On April 3, 2018, the Government filed a two-count indictment against Defendant Romeu, alleging violations of conspiracy to distribute and possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine under Title 21 of the United States Code. (Doc. 33, at 3). The Government concedes, "[e]vidence obtained pursuant to the . . . court orders was presented to the grand jury for consideration." (Doc. 46, at 9). Subsequently the Commonwealth withdrew its charges against Defendant. (*Id.* at 9-10).

On April 10, 2018, Magistrate Judge Joseph Saporito, Jr., arraigned Romeu, and Romeu entered a plea of not guilty. (Doc. 13). On October 11, 2018, Defendant filed the instant pretrial motion (Doc. 31) and supporting brief (Doc. 33). The Government has filed a brief in opposition of Defendant's motion (Doc. 46), to which Defendant has replied (Doc. 47). The motion has been fully briefed and is ripe for disposition. For the reasons set forth herein, the Court will deny Defendant Romeu's Motion.

2

## II. ANALYSIS

Defendant Romeu, in his brief, argues that the Government failed to comply with 18 U.S.C. § 2517(5) before presenting the intercepted communications to the Grand Jury. (Doc. 33, at 5). Specifically, Romeu argues that the evidence from the state wiretap authorization, which only provided authorization for state drug offenses under Pennsylvania state law, could not be presented to a federal grand jury investigating federal drug offenses under Title 21 of the United States Code. (*Id.* at 6). As a result, Romeu argues that the proper remedy for such a violation is suppression of the intercepted communications and dismissal of the indictment. (*Id.* at 7). For the reasons that follow, the Court disagrees.

To ascertain the merits of Defendant Romeu's argument, the Court will review the relevant provision of the United States Code. Section 2517(5) of Title 18 states,

> [w]hen an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable

18 U.S.C. § 2517(5). Numerous courts have held that the purpose of 18 U.S.C. § 2517(5) is to prevent subterfuge searches, i.e., the naming of "one crime for which in fact [the investigator] may have anticipated intercepting evidence of a different crime for which the

3

prerequisites could not be satisfied." *United States v. Campagnuolo*, 556 F.2d 1209, 123 (5th Cir. 1977); *see also United States v. Vento*, 533 F.2d 838, 855 (3d Cir. 1976); *United States v. Marion*, 535 F.2d 697, 700-01 (2d Cir. 1976); *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975). Thus, Romeu's argument hinges on whether the federal offenses were "offenses other than those specified in the order of authorization or approval" and required subsequent application. 18 U.S.C. § 2517(5).

Romeu directs the Court to *Brodson* and *Marion* in support of his argument that authorization for state offenses does not amount to authorization for federal offenses, and thus the Government violated § 2517(5) by disclosing the intercepted communications during the grand jury proceeding. (Doc. 33, at 5). *Brodson* and *Marion*, however, are inapposite to the instant case. In both *Brodson* and *Marion*, the Government obtained authorization for a wiretap for a state offense but used that evidence for an indictment on an entirely separate crime, thereby raising a concern of a subterfuge search. *See Brodson*, 528 F.2d at 216 ("[T]he two offenses are wholly separate and distinct; they involve dissimilar elements and require different evidence, even though some of it might overlap because both concern illegal gambling."); *Marion*, 535 F.2d at 699 (ruling that Government violated § 2517(5) when it obtained wiretap evidence based upon state offenses of larceny, assault, and possession of a dangerous weapon, and used that evidence to pursue indictments on federal offenses of perjury and obstruction of justice). On the other hand, here, as the Government contends, the federal and state offenses involved proof of the same elements.

4

(Doc. 46, at 13). In its brief, the Government demonstrates that authorization was issued for 18 Pa. C.S. § 903 (conspiracy), 35 P.S. § 780-113(a)(3) (delivery and/or possession with intent to deliver a controlled substance), 18 Pa. C.S. § 911 (corrupt organization), and 18 Pa. C.S. § 5111 (dealing in proceeds of unlawful activity)." (Doc. 33, at 4). (*Id.*). The Government sought Romeu's indictment under 21 U.S.C. § 846 (conspiracy), which involves the exact same elements as 18 Pa. C.S. § 903, and 21 U.S.C. § 841 (possession with intent to distribute), which involves the exact same elements as 35 P.S. § 780-113(a)(3). (Doc. 33, at 4). Thus, the conduct here does not raise the same concerns of a subterfuge search which were at issue in *Brodson* and *Marion*.

The Court notes that the Third Circuit has not yet directly addressed this issue, i.e., whether the Government may use authorization for state offenses to indict a Defendant under the same federal offenses. However, in addressing this issue, the First Circuit explained, "[t]here is no possibility of a subterfuge search here, since the elements of the state offense specified in the authorization are identical to the elements of the federal offense for which the evidence was used." *United States v. Smith*, 726 F.2d 852, 866 (1st Cir. 1984). The First Circuit concluded, "the federal offense cannot be considered an offense 'other than those specified in the order' within the meaning of § 2517(5), and . . . the purposes of Title III are not usefully furthered by requiring § 2517(5) approval." *Id.* Following the rationale in *Smith*, the court in *United States v. Gatson* also reached the conclusion that no additional judicial approval was necessary to present evidence derived

5

from state authorization, which only referenced crimes under state law, to a federal grand jury for an indictment under the same federal offenses. *See United States v. Gatson*, Cr. No. 13-705, 2014 WL 7182275, at *3 (D.N.J. December 16, 2014).

In light of this, the Court finds that Romeu's argument that the Government violated 18 U.S.C. § 2517(5) by using authorization of state offenses to support an indictment under federal offenses requiring the exact same elements lacks merit. As both the First Circuit in *Smith* and the District Court in *Gatson* concluded, there is no possibility of a subterfuge search where the elements of the offense in the authorization are the exact same as those under which the indictment is being brought. Thus, here, where the offenses in the authorization required proof of the exact same elements as those under which the indictment was brought, the Government did not violate 18 U.S.C. § 2517(5) by failing to seek separate authorization for those federal offenses.[1] In reaching this conclusion, this Court echoes the same caution that the First Circuit expressed in *Smith*:

> We wish to emphasize that this holding is not to be read as creating a broad exception to § 2517(5) . . . . [I]t will be a rare case in which the provision of parallel state and federal statutes are 'sufficiently similar' to make separate authorization unnecessary . . . . [T]he simplest and safest course is for the

---

[1] Because this Court concludes that the Government was not required to obtain separate authorization in these circumstances, further discussion of the Government's request to consider approving the attached "Application for an Order Authorizing the Disclosure and Use of Intercepted Communications" (Doc. 46-1) which it sets forth in its brief (Doc. 46, at 18) is not warranted.

6

investigating officials to seek specific judicial authorization pursuant to § 2517(5) for any evidence they acquire in the course of a wiretap.

Smith, 726 F.2d at 866.

Notwithstanding the above, even assuming, arguendo, that the Government did violate § 2517(5) by not obtaining subsequent approval for the federal offenses, the § 2517(5) violation does not provide a basis for either suppressing the intercepted communications or dismissing the indictment. As Romeu conceded in his brief, the Third Circuit Court of Appeals in United States v. Williams held that "Title III does not prescribe suppression as a remedy for a disclosure violation." (Doc. 33 at 7 (citing United States v. Williams, 124 F.3d 411, 426 (3d Cir. 1997)). Romeu further argues that, "[t]his Court and the Court of Appeals should revisit Williams." (Doc. 33, at 8). Romeu provides no basis for doing so other than "[l]eading commentators have criticized Williams." (Id. at 7).

This Court will not disregard binding Third Circuit precedent. Williams clearly provides that a court cannot suppress evidence based on violations of the nondisclosure restrictions in § 2517(5). Williams, 124 F.3d at 426-27 ("[O]ur court held more than 20 years ago that Title III does not prescribe suppression as a remedy for a disclosure violation."). To that end, even assuming that the Government's failure to obtain subsequent approval of the intercepted conversation amounts to a violation § 2517(5), the Court sees no basis for suppressing the evidence or dismissing the indictment.

## III. CONCLUSION

Accordingly, for the above-stated reasons, Romeu's "Motion to Dismiss the Indictment and Suppress Wire and Electronic Communications Disclosed in Violation of Title III" (Doc. 31) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge

8