IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | |
| v. | : | 3:18-CR-114 |
| | : | (JUDGE MARIANI) |
| ANGEL ROMEU, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Angel Romeu's "Motion to Suppress Evidence Seized in Violation of the United States Constitution" (Doc. 34).

In 2016, Pennsylvania State Police were investigating a large-scale methamphetamine distribution organization that operated mainly within Schuylkill County, Pennsylvania. During that investigation, the investigators utilized various law enforcement tools, such as wiretaps, pole cameras, tracking devices, and confidential informants, to collect evidence. (Doc. 48, at 5).

On April 8, 2016, Trooper Troy S. Greenawald presented a search warrant application to Judge Cyrus Palmer Dolbin, Schuylkill County Court of Common Pleas, to search Defendant Romeu's residence. Trooper Greenawald's Affidavit (Doc. 35-2) was provided in support of the application. Further, the Court notes that the warrant did not identify the items to be searched for and seized but referred to an "Attachment 'A'" (Doc. 35-3), which lists the items to be searched for and seized.

On April 9, 2016, law enforcement executed the search warrant at Romeu's residence. During the execution of the warrant, law enforcement searched one of Romeu's vehicles, a 2008 black Chevrolet Silverado. The Government provided a receipt/inventory of the seized property. (Doc. 48-1, at 2-3). That same day, Defendant Romeu was also arrested by the Pennsylvania State Police and "charged with various Pennsylvania Drug Act offenses, including Conspiracy to Deliver and Possess with Intent to Deliver Drugs and Possession with Intent to Distribute Drugs." (Doc. 48, at 6).

On April 3, 2018, the Government filed a two-count indictment against Defendant Romeu, alleging violations of conspiracy to distribute and possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine under Title 21 of the United States Code. (Doc. 33, at 3).

On April 10, 2018, Magistrate Judge Joseph Saporito, Jr., arraigned Romeu, and Romeu entered a plea of not guilty. (Doc. 13). On October 11, 2018, Defendant filed the instant pretrial motion (Doc. 34) and supporting brief (Doc. 36). The Government has filed a brief in opposition of Defendant's motion (Doc. 48), to which Defendant has replied (Doc. 49). The motion has been fully briefed and is ripe for disposition.

For the reasons discussed herein, the Court will grant Romeu an evidentiary hearing **limited** to the development of the following issues:

1. Whether Romeu's 2008 Black Chevrolet Silverado was within the curtilage, as defined by *United States v. Dunn*, 480 U.S. 294, 301 (1987), of 121 S. Nicholas St. premises.

2. Whether "Attachment 'A'" (Doc. 35-3) was provided to Judge Dolbin, and Romeu at the time the search warrant was executed.

3. If "Attachment 'A'" (Doc. 35-3) was not provided to Romeu at the time the search warrant was executed, whether the state troopers was "grossly negligent"; the extent to which the violation undermined the purposes of the Fourth Amendment (i.e., the extent to which Romeu was harmed by the violation); and what, if anything, the Government gained from the violation. *United States v. Graves*, 751 F. App'x 161, 164 (3d Cir. 2018) ("The District Court subsequently conducted an evidentiary hearing on the culpability of the officer.").

## II. ANALYSIS

In his motion, Defendant Romeu sets forth three grounds for suppression of the evidence obtained under the warrant: (1) the warrant authorizing the search was not supported by probable cause; (2) the warrant authorizing the search was overbroad; and (3) the warrant did not sufficiently particularize the things to be seized from his residence. (Doc. 36, at 4). The Court addresses each basis for suppression separately.

## 1. Sufficiency of Probable Cause to Search Romeu's Residence

Romeu argues that the Greenawald Affidavit "fails to provide a substantial basis of support for the issuing judge's finding of probable cause to search Mr. Romeu's residence." (Doc. 36, at 6). Romeu asserts that the Affidavit did not establish a basis for probable cause to search Romeu's residence because it: (1) does not contain any evidence supporting the suspicion that Romeu was supplying methamphetamine to Bainbridge; (2) does not contain any evidence that Romeu took contraband into his residence; (3) provides no support for the notion that the items remained in Romeu's residence ten days later when the troopers performed the search; and (4) discusses an alternative location that was more likely to store items related to drug trafficking. (Doc. 36, at 7-8). The Government contends that the Affidavit provided a substantial basis for probable cause, and in the alternative, even if the Affidavit lacked the requisite probable cause, the evidence need not be suppressed under the good faith exception. (Doc. 48, at 14). For the reasons that follow, the Court rejects Romeu's arguments for suppression on these grounds.

"A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Spinelli v. United States*, 395 U.S. 410, 419 (1969). "The duty of a reviewing court is simply to ensure that the magistrate had 'a substantial basis for . . . concluding' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a 'fair probability that

4

contraband or evidence of a crime will be found in a particular place,' a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting *Gates*, 462 U.S. at 238).

This standard "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). But, the role of the reviewing court is limited. *See United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("[A]lthough in a particular case it may not be easy to determine whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should largely be determined by preference to be accorded to warrants.").

With the above in mind, the task of the issuing judge is to make a "practical commonsense decision whether, given all of the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. To that end, the Third Circuit has held that "[t]he supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." *Conley*, 4 F.3d at 1208 (quoting *United States v. Brown*, 3 F.3d 673, 678 n.5 (3d Cir. 1993)). "The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."

*United States v. Caicedo*, 85 F.3d 1184, 1192 (quoting *United States v. Lawson*, 999 F.3d

985, 987 (6th Cir. 1993)).

Here, upon consideration of the facts contained in Greenawald's Affidavit and normal

inferences drawn therefrom, the Affidavit provided a substantial basis for a finding of

probable cause to search Romeu's residence.

The Third Circuit explained:

We have held that "direct evidence linking the residence to criminal activity is not required to establish probable cause." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). Instead, "an accumulation of circumstantial evidence" can be sufficient to demonstrate a fair probability that evidence of criminal activity is present at an individual's residence. *Id.* Factors to be considered in evaluating the circumstantial evidence include: "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence of criminal activity]." *Id.* (internal quotations and citation omitted).

Additionally, we have determined that it is reasonable to infer that drug dealers store evidence of drug-related criminal activity in their homes. *Id.* at 104. "[A]pplication of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." *Id.*

*United States v. Harris*, No. 06-1286, 2007 WL 3120332, at *2 (3d Cir. Oct. 25, 2007); *see

also United States v. Bangaroo*, 3:15-cr-001724, 2017 WL 3495702, at *10 (M.D. Pa. Aug.

15, 2017) (applying the *Burton* premises to determine that there was a substantial basis to

infer that evidence of defendant's drug activity was being stored at his residence).

In the instant case, the evidence detailed in the Affidavit provides a basis for probable cause in satisfaction of each of the preliminary premises. *See Burton*, 288 F.3d at 104. As such, an inference to believe that Romeu stored evidence of drug-related criminal activity in his home is merited. *See id.*

With respect to the first premise, the evidence detailed in the Affidavit to obtain the search warrant for 121 South Nicholas Street adequately supports the premise that Romeu was actually a drug dealer. As noted in the Affidavit, Romeu had a history of distributing methamphetamine (Doc. 35-2, at ¶¶ 24-25), which strengthens a finding of probable cause that Romeu was also a drug dealer in this case. *See Conley*, 4 F.3d at 1207 ("The use of prior arrests and convictions to aid in establishing probable cause is not only permissible, but is often helpful. This is especially so where, as in the matter presently before the court, the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.").

The Affidavit also details several sequences of events which suggest that Romeu was engaged in narcotics trafficking. For example, the Affidavit details Romeu's activity on March 12, 2016, which the Trooper determined was consistent with the inference that Romeu was engaged in narcotics trafficking. Related to those events, the Affidavit avers that intercepted communications revealed that Bainbridge, a conspirator and alleged customer of Romeu, was being contacted by numerous individuals looking to purchase methamphetamine, but Bainbridge had run out of his supply of methamphetamine. (Doc.

35-2, at ¶¶ 88-94). During an intercepted conversation on March 12, 2016, Bainbridge told a customer that his supplier will "be here before six." (*Id.* at ¶ 95). At approximately 6:02 p.m., Romeu arrived with a bag in his hand, then left the residence about 6 minutes later and was seen carrying a box into his vehicle. (*Id.* at ¶¶ 97-99). Thereafter, Bainbridge was observed meeting with methamphetamine customers throughout the evening. (*Id.* at ¶ 101). Thus, based on the Affidavit and the intercepted communications, it is conceivable that Bainbridge was waiting for his supplier, and Romeu, who had a prior conviction for trafficking methamphetamine, showed up at the scheduled time for Bainbridge's supplier to arrive with a package. This sequence of events clearly lays a foundation to establish probable cause to believe that Romeu was involved in drug trafficking.

Additionally, on March 23, 2016, the Affidavit details the following sequence of events, also consistent with an inference that Romeu was engaged narcotics trafficking:

139.    On March 23, 2016 at approximately 8:56 a.m., members of law enforcement observed a dark colored, Chevrolet extended-cab pick-up truck bearing Pennsylvania Registration number RT66616 arrive at the residence of David Bainbridge and back in to the driveway. Angel Romeu was subsequently observed exiting the vehicle.

140.    At approximately 8:57 a.m., David Bainbridge arrived at his residence operating his Chevrolet pick-up truck. Bainbridge parked next to the Romeu vehicle with his passenger door adjacent to that of the Romeu vehicle. Both Romeu and Bainbridge then opened the passenger doors of the Romeu vehicle.    Both also examined the Romeu vehicle for a period of time. Bainbridge then briefly opened the passenger door of his vehicle.

141.    After a period of time, all doors to the Romeu vehicle were closed. Bainbridge entered the passenger side of his vehicle and removed what appeared to be a white, grocery type bag. Both Romeu and Bainbridge subsequently entered the Bainbridge residence. Your Affiant believes that the

8

aforementioned bag was removed from the Romeu vehicle and placed in the Bainbridge vehicle for a brief period of time while the passenger doors to both vehicles were open.

142.    On March 23, 2016, at approximately 9:54 a.m., Angel Romeu was observed by members of law enforcement exiting the residence of David Bainbridge. Romeu then entered the aforementioned Chevrolet pick-up truck and departed the area. Romeu then proceeded directly to his residence located at 121 South Nicholas street within the Borough of Saint Clair, Schuylkill County, Pennsylvania.

(Doc. 35-2, at ¶¶ 139-42).

In discussing his perception of the March 12 and March 23 events in the Affidavit, the Trooper, based on his twenty-three years of experience, training, and common sense, reasonably concluded that there was probable cause to believe that Romeu was engaged in narcotics trafficking during the recounted sequence of events from March 12 and March 23. The Trooper's conclusions are entitled to "considerable weight" when evaluating the probable cause basis developed by the search warrant and the accompanying affidavit, and thus provide further support for a finding of probable cause that Romeu was engaged in drug trafficking. *United States v. Kaplan*, 526 F. App'x 208, 212 (3d Cir. 2013) (quoting *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)) ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers.").

Finally, the Affidavit also contains information received from a confidential informant, who "has provided reliable information in the past" and "has also provided a considerable amount of intelligence information, all of which has been verified through the use of

9

investigative techniques." (Doc. 35-2, at ¶ 193). The confidential informant averred that he/she "was present with another individual who purchased a large quantity of methamphetamine from Angel" (*id.* at ¶ 194), and that "he/she was present with the aforementioned methamphetamine customer of 'Angel' on numerous occasions when the trafficking of methamphetamine was discussed" (*id.* at ¶ 195). The reliable confidential source's information, therefore, also bolstered the Affidavit's basis for probable cause to believe that Romeu was engaged in narcotics trafficking. *See, e.g., United States v. Horsley,* 621 F. Supp. 1060, 1072 (W.D. Pa. 1985) (affording weight to reliable confidential informant's information in probable cause determination).

In light of the foregoing details provided in the Affidavit, it sensibly follows that the totality of circumstances furnished probable cause to believe that Romeu was engaged in narcotics trafficking. On numerous occasions, Romeu was observed engaging in activity that resembled a drug transaction. These observations, coupled with Greenawald's experience and training, Romeu's prior history, and the extensive information obtained in the investigation (including the information from the reliable confidential informant) provided probable cause to believe that Romeu was engaged in narcotics trafficking. Accordingly, the Affidavit provided sufficient facts to furnish probable cause to believe that the first premise under *United States v. Burton* has been met. *See Burton,* 288 F.3d at 104.

With respect to the second premise, the Affidavit provided sufficient evidence to establish that the place to be searched, i.e., 121 South Nicholas Street, was Romeu's

10

domicile. The Affidavit notes that the listed address on Romeu's Pennsylvania Operator's License is 121 South Nicholas Street, Saint Clair, Pennsylvania (Doc. 35-2, at 23). Additionally, the Affidavit states:

> 197. . . . CS 1 directed your Affiant to the residence located at 121 South Nicholas Street within the Borough of Saint Clair, Schuylkill County, Pennsylvania, and identified the same as the residence of Angel. While passing the residence, Angel Romeu was standing in the vicinity of his white Kia next to his residence. CS 1 identified Angel Romeu to your Affiant.

(Doc. 35-2, at ¶ 197). Finally, the Affidavit avers on numerous occasions, based upon physical surveillance, Romeu was followed back to the 121 South Nicholas Street residence. (*See id.* at ¶¶ 100, 109, 142, 150). In light of this information, the Affidavit provides a sufficient basis to support that premise that the place to be searched – 121 South Nicholas Street – was Romeu's domicile. *See Burton*, 288 F.3d at 104.

Lastly, with respect to the third premise, the Affidavit ties Romeu's alleged drug trafficking to his home on 121 South Nicholas Street. On three occasions, after being observed in sequences of events resembling drug transactions, Romeu proceeded directly back to his residence. For example, during the March 12, 2016 events described *supra*, at pp. 6-7, involving Bainbridge, the Affidavit further states:

> 100. Following the aforementioned, Romeu was followed by members of law enforcement to the Tiger's Den gas station located on State Route 0061. Romeu remained at this location for a short period of time. Romeu then departed the Tiger's Den gas station and proceeded directly to the residence located at 121 South Nicholas Street within the Borough of Saint Clair,

Schuylkill County, Pennsylvania. Romeu was observed exiting the vehicle and subsequently entering the residence located at the aforementioned location.

(Doc. 35-2, at ¶ 100).

Similarly, after the sequence of events which took place on March 24, 2016, as detailed more fully *supra*, at pp. 7-8, the Affidavit further states:

142. On March 23, 2016, at approximately 9:45 a.m., Angel Romeu was observed by members of law enforcement exiting the residence of David Bainbridge. Romeu then entered the aforementioned Chevrolet pick-up truck and departed the area. Romeu then proceeded directly to his residence located at 121 South Nicholas Street within the Borough of Saint Clair, Schuylkill County, Pennsylvania.

(Doc. 35-2, at ¶ 142).

The Affidavit also details the following sequence of events, which occurred on March 27, 2016:

147. On March 27, 2016 at approximately 1:01 p.m., members of law enforcement observed a black, Chevrolet pick-up truck bearing Pennsylvania Registration number RT66616 arrive at the residence of David Bainbridge. Angel Romeu subsequently exited the vehicle and entered the Bainbridge residence.

148. At approximately 1:25 p.m., Angel Romeu exited the Bainbridge residence carrying a package under his right arm and entered the passenger side of the pickup-truck. David Bainbridge exited the residence at this time and entered the driver's side of the vehicle. After a period of time, Bainbridge and Romeu departed the area of the Bainbridge residence.

149. At approximately 1:33 p.m., Bainbridge and Romeu returned to the Bainbridge residence. Bainbridge exited the driver's side of the vehicle and Romeu exited the passenger side. Romeu subsequently entered the driver's side of the vehicle and departed the area. Bainbridge returned to his residence.

150. Members of law enforcement subsequently followed Angel Romeu to his residence located at 121 South Nicholas Street within the Borough of Saint Clair, Schuylkill County, Pennsylvania.

(Doc. 35-2, at ¶¶ 147-150).

These facts, as set forth in the Affidavit, when viewed by a judge, were sufficient to establish a "fair probability" that evidence of drug trafficking would be found at Romeu's residence. See Gates, 462 U.S. at 238. As the Third Circuit explained, "[w]hile we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home, that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction." Burton, 288 F.3d at 104. Tellingly, in three instances, Romeu immediately returned to his home after engaging in behavior, which the Trooper, based on his experience and training, believed was related to narcotics trafficking. Thus, it follows that the Affidavit sufficiently tied Romeu's alleged drug trafficking to his home in satisfaction of the third premise. See Burton, 288 F.3d at 104.

Romeu contends that "the Affidavit does not say that Mr. Romeu took these items into the S. Nicholas Street residence" and "the notion that the box/package would contain evidence of drug trafficking is based completely on Greenawald's uncorroborated suspicion." (Doc. 36, at 7). In so arguing, Romeu seems to assert that Greenawald needed to be certain that Romeu was engaged in narcotics trafficking or that the items Romeu was observed carrying were in fact contraband.

Romeu's argument overlooks the standard for probable cause. While "[p]robable cause . . . requires more than mere suspicion; . . . it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995); *see also Gates*, 462 U.S. at 243 n. 13 ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). "Direct evidence of a crime is not required for the issuance of a search warrant." *United States v. Pearson*, 181 F. App'x 192, 195 (3d Cir. 2006) (citing *Burton*, 288 F.3d at 103). "[P]robable cause is supported as long as the 'veracity' and 'basis of knowledge' of the persons providing the information the information is sufficient to 'provide a fair probability, under the totality of the circumstances, that evidence of criminal activity will be discovered in a certain place.'" *Id.* at 195. The Court finds that the significant accumulation of evidence – including Romeu's prior drug history, Romeu's observed behavior, and the extensive information obtained in the investigation (such as the information from the confidential informant) – justified an inference that Romeu was engaged in narcotics trafficking and brought contraband back to his residence. That justification is buttressed when viewing the evidence "[f]rom the perspective of an experienced law enforcement officer, or indeed from the perspective of any reasonably prudent observant of these activities." *Burton*, 288 F.3d at 99. As such, the Court rejects Romeu's argument.

The Court similarly rejects Romeu's conclusory, unsupported assertion that "the Affidavit provides no support for the notion that [the contraband] remained in the residence ten days later when troopers performed the search." (Doc. 36, at 7).

Generally, when information supporting a warrant is too old, the information may be stale and cannot establish probable cause. *See United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). However, "age alone does not determine whether information is stale." *United States v. Costa*, 736 F. Supp. 2d 859, 863 (D. Del. 2010) (citing *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2010)). "Instead, the reviewing court must examine, on a case-by-case basis, the: (1) nature of the crime; and (2) the type of evidence sought by the warrant." *Id.*

The Third Circuit has held that "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance." *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005). For example, in *United States v. Costa*, the court found that the information in the affidavit collected from a several-month long investigation of a drug distribution operation was not stale where a seven-month gap existed between the occurrence of the information in the affidavit and the presentation of the affidavit. 736 F. Supp. 2d at 863.

Here, the information in the Affidavit was not stale. With respect to the nature of the crime, the factual allegations in the Affidavit demonstrate that Romeu was engaged, for at

least several months in 2016 in a significant illegal drug distribution operation. Moreover, prior to the identification of Romeu as a target of the investigation, the state troopers had been investigating the conspiracy since October, 2015. Thus, like the defendant in *Costa*, Romeu's continuous course of conduct in the large-scale drug operation over at least several months made it reasonable to conclude that the illegal drug sales would continue beyond the mere ten-day gap between the warrant application and the last relevant observation of Romeu at his residence. 736 F. Supp. 2d at 863.

Further, the troopers sought evidence consistent with the ongoing drug transactions. "[A] person engaged in a large scale drug distribution operation would maintain the type of evidence sought by the warrant for an extended period of time." *Costa*, 736 F. Supp. 2d at 864 (citing *United States v. Rojas Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006)). Thus, it was also reasonable to infer that contraband related to the ongoing drug trafficking would still be found in his residence ten days after the Affidavit was provided to the issuing judge. Accordingly, the Court finds that Romeu's argument with respect to staleness lacks merit.

In light of the foregoing, Romeu's arguments do not undermine the Affidavit's satisfaction of the third premise under *Burton*, i.e., that the Affidavit contains information suggesting that Romeu's residence contained contraband linking it to the drug dealer's activities. *Burton*, 288 F.3d at 103. As such, because the Court has determined that all three premises under *Burton* have been satisfied, the Court concludes that the information that the state troopers acquired and set forth in the Affidavit reviewed by Judge Dolbin

provided a substantial basis from which it was reasonable to infer that evidence of Romeu's drug activity would be uncovered at 121 South Nicholas Street. *See Burton*, 288 F.3d at 104.

Because an inference that contraband would be found in Romeu's residence is merited, the Court also rejects Romeu's conclusory, unsupported assertion that probable cause to search Romeu's residence is undermined by the Affidavit's suggestion "that Mr. Romeu used an alternative location, JM Auto Service, for the storage of items related to drug trafficking, not his home." (Doc. 48, at 9). "The magistrate need only conclude that it would be reasonable to seek the evidence *in the place* indicated in the affidavit." *United States v. Peacock*, 761 F. 2d 994, 997 (9th Cir. 1988) (emphasis added). Here, as discussed above, the nexus between the place indicated in the Affidavit and in the search warrant, i.e., Romeu's residence, and Romeu's behavior – which suggested that he was involved in narcotics trafficking – provides a substantial basis that there is a "fair probability that contraband or evidence of a crime will be found in a particular place," i.e. Romeu's home. *Gates*, 462 U.S. at 238. Put differently, the state troopers had probable cause – independent of alternative locations – to believe that contraband would be found at Romeu's residence. Thus, the Court rejects Romeu's argument.

In light of the foregoing, under the facts presented in the Affidavit, the "totality of the circumstances" supports Judge Dolbin's issuance of the warrant to search Romeu's

17

residence, and the court will not second-guess the Judge's decision.[1] *See, e.g., United States v. Ritter,* 416 F.3d 256, 264 (3d Cir. 2005) (citing *Gates,* 462 U.S. at 236) ("The Supreme Court has clearly indicated that the conclusions of a neutral magistrate regarding probable cause are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided."). Accordingly, the Court rejects Romeu's argument to suppress evidence because the Affidavit did not provide a sufficient basis for probable cause to search his residence.

## 2. Probable Cause to Search the Pick-Up Truck

In regard to Romeu's second basis for suppression, Romeu contends that the Greenawald Search Warrant (Doc. 35-1; Doc. 35-3) was overbroad because "assuming a substantial basis for probable cause to search the S. Nicholas Street *residence,* probable cause did not extend to the entire S. Nicholas Street *premises,* in particular, the pick-up truck. (Doc. 36, at 9 (emphasis in original)). In its briefing, the Government contends that the warrant was not overbroad because "[w]hen a warrant authorizes a search of a specific address, law enforcement are authorized to search all structures within the curtilage of the address." (Doc. 48, at 17).

---

[1] Because the Court concludes that the warrant did establish a substantial basis for probable cause to search Romeu's residence, and the evidence derived therefrom does not warrant suppression on this basis, the Court declines to address the Government's alternative argument that the "good faith" exception applies.

Generally, "when a warrant authorizes a search of the 'premises' and is sufficiently particular to distinguish the address to be searched from other locations, law enforcement officers are entitled to search all structures within the curtilage of the address." *United States v. Bansal*, 2006 WL 8435413, at *2 (E.D. Pa. Feb. 9, 2006). As discussed by the District Court in *United States v. Perez*, a valid warrant also extends a search to the vehicles within the curtilage of the premises to be searched:

> The Third Circuit has not discussed the lawfulness of vehicle searches pursuant to "premises warrants" which do not specifically mention automobiles. *Cf. United States v. Menke*, 468 F.2d 20, 22 (3d Cir. 1972) (analyzing search of car as warrantless seizure where "area for search set forth" in agents' warrant "was limited to the house and did not include the automobile"). A number of other courts, however, have concluded that a valid warrant for a "premises" generally permits the search of any vehicles owned by the resident that are located on the property. *See, e.g., United States v. Reivich*, 793 F.2d 957. 963 (8th Cir. 1986) (citing *United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985)) (additional citations omitted) (noting that vehicles except for "the vehicle of a guest or other caller" are included within scope of a warrant authorizing a premises search); *United States v. Silva*, 593 F. Supp. 2d 316, 318 (D. Mass. 2009) (citing *United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002)) (additional citations omitted). In this vein, the Fifth Circuit has "consistently held that a warrant authorizing a "search of 'the premises' includes vehicles parked on the premises." *United States v. Fields*, 380 F. App'x 400, 404 n.22 (5th Cir. 2010) (quoting *United States v. Singer*, 970 F.2d 1414, 1418 (5th Cir. 1992)).

*United States v. Perez*, No. 11-256, 2011 WL 3438094, at *3 (E.D. Pa. Aug. 5, 2011).

Nonetheless, "the question of the extent of curtilage is 'essentially factual.'" *Id.* at *2.

In *United States v. Dunn*, the Supreme Court directed that questions of curtilage should be

> resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included in an enclosure surrounding the home, the nature of the uses to which the area is

put, and the steps taken by the resident to protect the area from observation
by people passing by.

480 U.S. 294, 301 (1987).

With the above in mind, the Court notes that the "Application for Search Warrant and

Authorization" describes the premises to be searched as:

> 121 S. Nicholas St., Saint Clair Borough, Schuylkill County, Pennsylvania.
> Residence is a semi-detached 2 story house with white siding. The front porch
> has white rails. The front door is white with a glass storm door. The numbers
> 121 are marked to the left of the front door above a black mail box.

(Doc. 35-1, at 2).

Neither party has set forth evidence to allow the Court to reach a determination as to

whether the 2008 Black Chevrolet pick-up truck at issue was within the curtilage of the

above-described premises at the time that it was searched. Thus, an evidentiary hearing is

merited to develop this specific issue with reference to the four factors set forth above in

*Dunn.* For that reason, the Court will reserve ruling on the issue until a hearing. The Court

will also reserve ruling on Government's alternative argument regarding whether law

enforcement had probable cause to search Romeu's vehicle without a warrant until after the

evidentiary hearing.

## 3. Search Warrant's Particularity

The third basis for suppression raised in Romeu's motion is that "the Warrant did not sufficiently particularize the things to be seized from the S. Nicholas Street Premises." (Doc. 36, at 11). More specifically, Romeu contends "[t]he list of items to be seized, "Attachment 'A,'" was apparently sealed along with the Greenawald Affidavit at the time the troopers searched the S. Nicholas Street Premises, and the list was not presented with the warrant." (*Id.*). Further, "[i]t is also not clear from the materials provided to counsel that 'Attachment A' was ever, in fact, attached to the warrant for review of Judge Dolbin." (*Id.* at n.2). The Government contends that "Attachment A" was provided along with the warrant at the time of the search and to the Court. (Doc. 48, at 16).

The Third Circuit Court of Appeals has held,

> "if the government wishes to keep an affidavit under seal" – in order to protect witnesses, for example – "it must list the items it seeks with particularity in the warrant itself. It is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized."

*Bartholomew v. Commonwealth of Pa.*, 221 F.3d 425, 428 (3d Cir. 2000) (quoting *United States v. McGrew*, 122 F.3d 847, 850 (9th Cir. 1997)).

In *United States v. Wright*, the Third Circuit considered the application of the exclusionary rule to violations under *Bartholomew*. 777 F.3d 635, 638 (3d Cir. 2015). There, the Third Circuit reiterated that, in considering whether an officer was "grossly negligent" with respect to defective warrants, i.e. the execution of a warrant where the

21

defendant did not have access to the list of items to be seized, so as to merit application of the exclusionary rule,

> "we consider not only any defects in the warrant, but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known." Thus, even if a warrant is facially invalid, an assessment of the officers' culpability and the value of deterrence may counsel against suppression.

*Id.* at 639 (quoting *United States v. Franz*, 772 F.3d 134, 144-47)). In evaluating the culpability of "the agents and prosecutors who failed to ensure that a list of items to be seized was attached to the warrant that was executed," the Third Circuit also considered: "(1) the extent to which the violation in this case undermined the purposes of the Fourth Amendment and (2) what the Government gained from the violation." *Id.* at 639-40. The Third Circuit further explained:

> The requirement that warrants particularly describe the things to be seized has a number of purposes. First, it provides "written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned." *Groh*, 540 U.S. at 560; *see also Tracey*, 597 F.3d at 146. Second, it prevents "general searches" by confining the discretion of officers and authorizing them to seize only particular items. *Tracey*, 597 F.3d at 146. Third, it "informs the subject of the search 'of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Id.* (quoting *Groh*, 540 U.S. at 561).
>
> The violation at issue here did not undermine the first two purposes of the particularity requirement. This was no general search, as Agent Taylor oversaw it and "assured that the [other] officers acted in accordance with the warrant's limits." *United States v. Wright*, Criminal No. 09-270-ALL, 2013 U.S. Dist. LEXIS 86937, 2013 WL 3090304, at *9 (E.D. Pa. June 20, 2013).
>
> Furthermore, we can be confident that the magistrate judge found probable cause to search for and seize every item listed in Agent Taylor's affidavit. When

the warrant was approved, the affidavit was attached and expressly incorporated by reference in the space for identifying the items to be seized. Indeed, in addition to signing the warrant, the magistrate signed the affidavit, albeit for the purpose of certifying that Agent Taylor had sworn to it. *See United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010) (noting that "the magistrate judge's signature on the affidavit reduces the concern that he did not agree to the scope of the search as defined and limited therein").

. . .

The failure to retain the list of items to be seized did undercut the third purpose of the particularity requirement, as Wright was not informed of the limits of the agents' power to search. Here, too, *Franz* presents a more compelling case for application of the good-faith exception: Agent Nardinger verbally explained to Franz what items the warrant authorized him to search for and seize. *See Franz*, 772 F.3d at 148.

The importance of this distinction is, however, questionable. The Supreme Court has observed that "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41" requires "the executing officer [to] present the property owner with a copy of the warrant before conducting his search." *United States v. Grubbs*, 547 U.S. 90, 98-99, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006). The Fourth Amendment "protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, [before the search], the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by providing, [after the search], a right to suppress evidence improperly obtained and a cause of action for damages." *Id*. at 99 (second alteration in original) (quoting *Wong Sun v. United States*, 371 U.S. 471, 481-482, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). It is therefore unclear how Wright was harmed by his inability to peruse the list of items the Government intended to seize at the time of the raid on his apartment.

It follows that the Government gained nothing from the Fourth Amendment violation. Even if the list of items to be seized had been present at the scene, the agents would have collected precisely the same evidence, and Wright would have been unable to stop them. The violation in this case had no impact on the evidence that could be deployed against Wright at trial.

Wright is undoubtedly correct to point out that suppression would incentivize the Government to carefully scrutinize each warrant before it is executed. The

purpose of imposing tort liability for negligence is, after all, to encourage individuals to exercise reasonable care. In the context of suppression, however, the Supreme Court has unequivocally held that deterring isolated negligence is not worth the social cost of excluded evidence. *See Herring*, 555 U.S. at 144 n.4, 147-48. Only if mistakes of this nature recur with some frequency will a criminal defendant be in a position to argue that the calculus has changed. *See id*. at 144.

*Id*. at 640-42.

In light of the above, the Court finds that an evidentiary hearing is required to enable the Court to make a determination on this issue. As a threshold matter, neither party set forth evidence as to whether "Attachment 'A'" (Doc. 35-3) was presented to Judge Dolbin or to Romeu at the time of the execution of the warrant.

Assuming, *arguendo*, that Romeu was not provided with the list of items to be seized, Romeu has not made any claim or provided any support to suggest that the state troopers was "grossly negligent." *See Wright*, 777 F.3d at 639. Further, it is entirely unclear how Romeu was "harmed by his inability to peruse the list of items the Government intended to seize at the time of the raid on his [residence]." *Id*. at 641. Upon the Court's own comparison of the receipt/inventory of seized property (Doc. 48-1) and "Attachment 'A'" (Doc. 35-3), the Court finds that the officers acted "in accordance with the search warrants limits" and did not seize any property that fell outside of the scope of Attachment A. *Wright*, 777 F.3d at 640.

### III. CONCLUSION

Accordingly, for the above-stated reasons, Romeu's "Motion to Suppress Evidence Seized in Violation of the United States Constitution" (Doc. 34) will be denied on the basis that the search warrant failed to provide a substantial basis of probable cause to search Romeu's home. However, as discussed above, an evidentiary hearing, **limited** to the following three issues, is merited:

1. Whether Romeu's 2008 Black Chevrolet Silverado was within the curtilage, as defined by *United States v. Dunn*, 480 U.S. 294, 301 (1987), of 121 S. Nicholas St. premises.

2. Whether "Attachment 'A'" (Doc. 35-3) was provided to Judge Dolbin, and Romeu at the time the search warrant was executed.

3. If "Attachment 'A'" (Doc. 35-3) was not provided to Romeu at the time the search warrant was executed, whether the state troopers was "grossly negligent"; the extent to which the violation undermined the purposes of the Fourth Amendment (i.e., the extent to which Romeu was harmed by the violation); and what, if anything, the Government gained from the violation. *United States v. Graves*, 751 F. App'x 161, 164 (3d Cir. 2018) ("The District Court subsequently conducted an evidentiary hearing on the culpability of the officer.").

Thus, the Court will reserve judgment on the motion with respect to those grounds for suppression until the evidentiary hearing is held.  A separate Order follows.

Robert D. Mariani
United States District Judge