UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:18-cr-00114 |
| v. | (MARIANI, J.)<br>(SAPORITO, M.J.) |
| ANGEL ROMEU, | |
| Defendant. | |

# MEMORANDUM

This matter is before the court on the motion for reopening of detention hearing and release (Doc. 76) filed by the defendant, Angel Romeu, a federal inmate housed at the Lackawanna County Prison (LCP).

On April 3, 2018, a grand jury sitting in the Middle District of Pennsylvania returned an indictment against Romeu and charged him with conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21 U.S.C. § 846, and possession with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21 U.S.C. § 841. (Doc. 1). On April 10, 2018, the undersigned United States magistrate judge arraigned Romeu and he entered a plea of "not guilty" to the indictment. The

government moved for the defendant's continued detention.[1] After a second detention hearing, we determined that, although Romeu presented sufficient evidence to rebut the presumption pursuant to 18 U.S.C. § 3142(e)(3), Romeu should be detained because there was clear and convincing evidence that "no condition or combination of conditions of release would reasonably assure the safety of any other person and the community." (Doc. 14). Thereafter, upon the filing of a motion by the defendant for release pending trial (Doc. 53), we conducted a third detention hearing on April 29, 2019. After the hearing, we denied the motion and ordered that Romeu shall remain detained pending further order of the court. (Doc. 60).

Romeu now asks that we reopen the detention hearing once again and order his release, at least temporarily, for compelling reasons related to COVID-19. (Doc. 77, at 2). With his motion, Romeu has attached a certificate of non-concurrence (Doc. 76-1) certifying that the assigned assistant United States attorney does not concur in his motion. Romeu

---

[1] The defendant was initially charged by criminal complaint, supported by an affidavit, prior to his indictment. Another United States magistrate judge, Hon. Karoline Mehalchick, presided over his initial appearance and ordered him detained in the first instance. *See United States v. Romeu*, No. 3:18-MJ-00029 (M.D. Pa. Apr. 4, 2020).

filed a brief in support of his motion (Doc. 77), and his counsel filed a notice which states that the issue of release was not resolved and that an in-court hearing is only necessary to the extent we determine that the capacity of the proposed third-party custodian may be material to our decision on the defendant's motion for release. (Doc. 78 ¶3). The government has filed a brief in opposition to the defendant's motion (Doc. 79).

## I. Statement of Facts

Romeu is charged in the indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21 U.S.C. § 846, and possession with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21 U.S.C. § 841. (Doc. 1). If convicted, he faces a maximum term of imprisonment of greater than 10 years. At the detention hearing held on April 10, 2018, the parties agreed that the presumption under 18 U.S.C. § 3142(e)(3) applied.[2] The Government proffered that over the course of an in-depth investigation in 2016, which

---

[2] The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks.

included pole cameras and wiretap orders, law enforcement determined that Romeu was a significant source of supply for a methamphetamine distribution conspiracy operating mainly out of Schuylkill County. (Doc 79, at 1-2). At the detention hearing held on April 10, 2018, we found that the defendant introduced sufficient evidence to rebut the presumption, but, after considering the presumption, the factors set forth in 18 U.S.C. § 3142(g), and the information presented at the detention hearing, we concluded that Romeu should be detained pending trial because the government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person in the community. In addition to the findings made on the record at the hearing, the reasons for detention included the following: he is subject to a lengthy period of incarceration if convicted; his prior criminal history; his participation in criminal activity while on probation, parole, or supervision; his history of alcohol or substance abuse; his lack of stable employment; and his prior violations of probation, parole, or supervised release.

In his brief in support of his motion, Romeu contends that we should reconsider our order of detention, if only temporarily, due to the risks

associated with being confined in a large group during the COVID-19 global pandemic. He cites five reasons why his motion should be granted: (1) the risk that he will flee or pose a danger to the community is low; (2) the danger to the community posed by congregate environments, such as prisons, is substantial; (3) the current limitations on his interactions with counsel are substantial; (4) we should find that his character, family ties, financial resources, community ties, history relating to drug or alcohol abuse, and record concerning appearances at court proceedings mitigate against any dangers otherwise associated with release; and (5) we can place conditions on his release that will ensure the safety of the community and his appearance as required. (Doc. 77, at 9-14). For the reasons discussed herein, we will deny Romeu's motion.

## II. Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[3] "COVID-19 is the infectious disease caused by the novel coronavirus." *United*

---

[3] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

*States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through June 4, 2020, for the majority of Pennsylvania counties—including Lackawanna County, where the defendant is detained at LCP. Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which present challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### b. *Conditions of LCP*

Romeu alleges that LCP has placed inmates on lockdown since April 2, 2020, after a LCP staff member tested positive for COVID-19. (Doc. 77, at 2). He contends generally, and not specifically with reference to LCP, that it is difficult or impossible for inmates to engage in social

6

distancing and self-quarantine precautions as recommended by the Centers for Disease Control and Prevention. There is a high turnover in prisons where new entrants come in daily who may have been exposed to COVID-19 in the surrounding community or other regions. (*Id*. at 4). LCP requires lawyers to meet with their clients through glass forcing almost all communications to be by telephone which limits the frequency, length, and quality of communications between Romeu and his counsel.

The government proffered in its brief that LCP has reported no positive COVID-19 cases among its inmate populations and only one corrections officer who tested positive but has since recovered. (Doc. 79, at 8). All inmates were informed and placed on lockdown. In addition, LCP sent twenty staff members home to self-quarantine solely as a precautionary measure. (*Id*.). We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive

sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. *18 U.S.C. § 3142(f)(2)—Reconsideration of detention orders*

Romeu seeks release because of the existence of COVID-19 and the alleged adverse conditions of LCP. The existence of COVID-19 was not known to Romeu at the time of his earlier detention hearings. The Bail Reform Act provides that a defendant who is detained pending trial may move the court to reconsider its detention order if the judicial officer finds that information exists that was not known to the movant at the time of

the hearing and that it has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f)(2).

In his brief in support of the instant motion, Romeu does not argue that he is in a high-risk category because he suffers from some medical condition that would make him more vulnerable to contracting the coronavirus. Regardless, that circumstance would not change even with the existence of the coronavirus pandemic. Since his incarceration at LCP, he has not been hospitalized, he has not had the need to use a nebulizer or an inhaler; nor does he take any prescribed medication. At best, Romeu presents only speculative arguments that his confinement in the LCP increases the health risks posed by COVID-19.

If released, it is presumed that Romeu would live with his wife and two children in a home he owns in St. Clair, Pennsylvania, where he has lived for more than a decade, and which he referenced in his brief. (Doc. 77, at 14). In his brief, he proposed his sister-in-law as his third-party custodian. (*Id*.) Apparently, she is present in Romeu's house for much of each day; she has no criminal history; she has no drug or alcohol abuse

9

problems; and she is willing to undertake the duties of a third-party custodian (*Id.* at 14-15). We have no reason to doubt the good intentions of Romeu's sister-in-law to act as his third-party custodian. Nevertheless, we are not inclined to reconsider our previous orders of detention. Romeu's subjective fears of COVID-19 does not provide a sufficient basis to reconsider our prior findings that he is a danger to the community, and that no condition or combination of conditions could adequately address those risks.

Romeu's motion is found wanting for several reasons. Other than a single guard who appears to have had no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all in-court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their

inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention.

In the absence of any evidence of a medically diagnosed health condition that would increase the risk to Romeu posed by COVID-19, or any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that the defendant should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). Accordingly, we are not persuaded to reconsider our order of detention.

### d.     18 U.S.C. § 3142(i)—Temporary Release

In his brief, Romeu also seeks release under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason. He cites the same reasons above

in support of his position that the global pandemic constitutes "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at *3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020)

(quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i). *Id.* A decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both

13

individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.* at *3.

We incorporate our analysis above under § 3142(f)(2) to arrive at the same conclusion here. While the court remains sympathetic to Romeu's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning

possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis*, No. 19-1604, 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020)

(denying a 67-year-old defendant's motion); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Romeu's continued incarceration would likely increase his risk of harm. However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it becomes clear that there are compelling reasons to justify the defendant's release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020)).

### III. Conclusion

For the reasons set forth above, Romeu has failed to demonstrate a basis for reopening or reconsidering our prior detention order under 18 U.S.C. § 3142(f), and he has failed to establish compelling reasons for temporary release under 18 U.S.C. § 3142(i). Therefore, his motion (Doc. 76) is denied.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
**JOSEPH F. SAPORITO, JR.**
**U.S. Magistrate Judge**

**Dated: May 14, 2020**